UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
─────────────────────────────────────
DAVID GOTTERUP,

                Petitioner,

-against-

UNITED STATES OF AMERICA.
─────────────────────────────────────

MEMORANDUM & ORDER
15-CR-498 (NGG)
18-CV-6491(NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

David Gotterup ("Petitioner" or "Defendant") brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. (Petition (Dkt. 104).)[1] For the following reasons, Gotterup's Petition is DENIED.

## I. BACKGROUND

### A. Criminal Conduct

Between September 2008 and June 2013, Petitioner and his co-conspirators engaged in three different fraudulent schemes: (1) fraudulent loan modification schemes, (2) fraudulent home flip schemes, and (3) fraudulent disaster loan schemes. (Pre-Sentencing Investigation Report ("PSR") ¶ 1).

In the first scheme, Petitioner targeted vulnerable homeowners, employing misleading and deceptive tactics to persuade them to pay upfront fees for mortgage modifications. (*Id.* ¶ 34.) He directed co-conspirators to provide these victims false information, including a promise of a money back guarantee and a 2% interest rate on the loan modification. (*Id.* ¶¶ 22-23, 34.) In exchange, the victims, more than a thousand homeowners, paid Gotterup

---

[1] All docket references are to Mr. Gotterup's criminal docket, No. 15-CR-498.

and his co-conspirators thousands of dollars in advance fees while receiving no legitimate services in return. (*Id.*)

Petitioner also engaged in a "flip scheme" wherein he falsified mortgage loan applications to take out mortgages with no intention to fulfill the payment obligations associated with the loans. (*Id.* ¶¶ 11-13.) In conducting the loan modification and mortgage flip schemes, Petitioner frequently relocated and altered the name of his businesses to obscure his fraudulent activities and evade detection. (*Id.* ¶ 23.) He also used the social security number of another person to acquire loans for personal assets, open a bank account, and cash checks for the schemes. (*Id.* ¶ 25.)

Finally, in October 2012, following Hurricane Sandy, Gotterup fraudulently applied for and received a loan from the Small Business Administration. (*Id.* ¶ 28.) Specifically, Gotterup misrepresented that he never had federally guaranteed loans and that he was not delinquent on loans or taxes. (*Id.*)

Notably, by the time Petitioner was charged in the Eastern District of New York, he had already been the subject of lawsuits in state courts in New York and Massachusetts for activities related to those included in the federal charge. (*See id.* ¶ 26.) These lawsuits led to injunctions prohibiting Petitioner and his companies from engaging in mortgage assistance relief services. (*Id.* ¶ 26; Gov't Opp. (Dkt. 107) at 2.) Despite these lawsuits and court orders, Petitioner persisted in his fraudulent schemes.

### B. The Guilty Plea and Sentencing

On October 2, 2015, the Petitioner was charged in an eleven-count indictment and, in June 2016, pleaded guilty to count two, conspiracy to commit mail, wire, and bank fraud, in violation of 18 U.S.C. § 1349. (Indictment (Dkt. 1); PSR ¶ 1; Judgment (Dkt. 76); Min. Entry dated June 6, 2016 (Dkt. 47) at 1.)

At the plea hearing, Petitioner engaged in a comprehensive colloquy with the court during which Mr. Gotterup stated that he

was of sound mind (Plea Tr. (Dkt. 100) at 4:12-5:5), satisfied with his legal counsel, (*id.* at 5:15-6:7), had a clear understanding of the charges, (*id.* at 6:11-9:19), had reviewed the entire indictment with his attorney, (*id.* at 21:2-17), had read the plea agreement, (*id.* at 12:20-23), understood the terms of the plea agreement, (*id.* at 13:4-10), and had discussed the plea agreement with his counsel, who had addressed all of his queries. (*Id.* at 12:24-13:10). The court also read Count Two verbatim, (*id.* at 6:13-7:18), and had the Government explain all the elements of conspiracy to commit mail, wire, and bank fraud for loan modification schemes. (*Id.* at 7:23-9:14.) Petitioner confirmed his understanding of the charge and the elements of the crime that the government would have to prove if he proceeded to trial. (*Id.* at 9:15-19.) The court then accepted Mr. Gotterup's plea after finding that he acted voluntarily and fully understood the charge, his rights, and the consequences of the plea. (*Id.* at 25:22-26:2.) As part of his plea, Mr. Gotterup agreed that he would be unable to withdraw the plea or challenge his conviction under 28 U.S.C. § 2255, or any other provision if the court sentenced him to a term of 188 months or less. (Ex. A to Gov't Opp. ("Plea Agreement") (Dkt. 107-1) ¶ 4; Plea Tr. at 19:11-20:10.)

On March 7, 2017, this court sentenced Petitioner to 180 months in prison, above the guidelines range of 135 to 168 months estimated in the plea agreement. (Sent. Tr. (Dkt. 66) at 37:7-8.) Defense counsel then requested that Petitioner be resentenced given the above-guidelines sentence, which the Government did not oppose. (*See generally* Mot. for Recons. (Dkt. 62-1); Letter from Gov't dated March 21, 2017 (Dkt. 63).) Petitioner's request was granted, and on April 19, 2017, Petitioner was subsequently resentenced to a within-guidelines sentence of 135 months in custody. (Resent. Tr. (Dkt. 89) at 34:20-24.) Judgment was entered to that effect on June 1, 2017. (Order (Dkt. 76) at ECF 1.) On June 23, 2017, the government filed a detailed restitution request for the petitioner, seeking $2,655,252.65 related to the

loan modification scheme. (Restitution Req. (Dkt. 82) at ECF 1-5.)

### C. Appeal

On June 16, 2017, the petitioner filed a *pro se* notice of appeal. (Notice of Appeal (Dkt. 78) at 1.) The Second Circuit appointed Paul Angioletti, Esq. to represent Petitioner on appeal pursuant to the Criminal Justice Act. (Ex. B. to Gov't Opp. ("*Anders* Brief") (Dkt. 107-2) at 2.) The Government filed a motion to dismiss the appeal based on the provision in the Plea Agreement waiving Petitioner's right to appeal sentences of 188 months or less. *See* Mot. to Dismiss Appeal, *United States v. Gotterup*, No. 17-1946 (2d Cir. Nov. 20, 2017), Dkt. 58 at 1-2. On January 19, 2018, Mr. Angioletti submitted a brief requesting to withdraw as Gotterup's counsel pursuant to *Anders v. California*, 586 U.S. 738 (1967) ("*Anders* brief"), asserting that: (1) the petitioner's plea allocution was knowing, intelligent and voluntary, and therefore enforceable; (2) the plea allocation met the requirements of Rule 11 and was advantageous to Gotterup; (3) there are no non-frivolus issues concerning ineffective assistance of counsel; (4) there are no non-frivolous issues concerning restitution which was correctly calculated; and (5) this court correctly followed sentencing procedures and articulated reasons justifying the sentence imposed. (*See generally Anders* brief). On June 29, 2018, the Second Circuit granted Angioletti's *Anders* motion and the Government's motion to dismiss. *See* Order Granting Motion to Dismiss Appeal, *United States v. Gotterup*, No. 17-1946 (2d Cir., June 29, 2019), Dkt. 91. (*See also* Mandate (Dkt. 103).)

### D. Petition for Writ of Habeas Corpus

On November 5, 2018, Gotterup filed the present Petition, seeking to vacate his conviction under 28 U.S.C. §2255. (*See generally* Petition.) On July 11, 2019, the Government filed an Opposition to Petitioner's motion and attached a number of exhibits in support. (*See* Gov't Opp.; Plea Agreement; *Anders* Brief; Ex. C to

Gov't Opp. ("Angioletti Letter to Gotterup") (Dkt. 107-3); Ex. D to Gov't Opp. ("Angioletti Letter to the Second Circuit") (Dkt. 107-4); Ex. E to Gov't Opp. ("Conway Aff.") (Dkt. 107-5).) Petitioner did not file a reply. (*See* Order Granting Extension to Reply (Dkt. 109).). The court now turns to the outstanding motion.

## II. LEGAL STANDARD

Under 28 U.S.C §2255, a court may "vacate, set aside or correct" a conviction or sentence "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255.[2] "'[I]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion.'" *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (quoting Rule 4(b) of the Rules Governing Section 2255 Proceedings). The court must read *pro se* pleadings liberally and interpret them "to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

## III. DISCUSSION

### A. Waiver

"Where the record clearly demonstrates that the defendant's waiver of her right to appeal a sentence within an agreed Guidelines range was knowing and voluntary, that waiver is enforceable." *United States v. Monzon*, 359 F. 3d 110, 116 (2d Cir. 2004). However, waiver of the right to appeal is "not enforceable where the defendant claims that the plea agreement was entered into without effective assistance of counsel." *United States v. Hernandez*, 242 F. 3d 110, 113-14 (2d Cir. 2001). But the petitioner must demonstrate such an ineffective assistance claim has merit; he cannot simply "claim[] ineffective assistance

---

[2] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

5

of counsel" to invalidate a waiver "if the record on appeal shows that that claim lacks merit." *Monzon*, 359 F.3d at 118-19.

Here, the petitioner "agree[d] not to file an appeal or otherwise challenge, by petition to 28 U.S.C. §2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 188 months or below." (Plea Agreement ¶ 4.) The court gave Petitioner a term of incarceration of 135 months, effectively barring his appeal absent a showing that Petitioner did not enter the agreement knowingly or voluntarily. That Mr. Gotterup made a clear and explicit waiver of the right to appeal is supported by: the Plea Agreement itself clearly stating the waiver (Plea Agreement ¶ 4), the affidavit filed by trial counsel in which Mr. Conway states that "[t[he decision to enter a plea was made freely and voluntarily by the defendant," as well as the lengthy colloquy at Mr. Gotterup's plea hearing, in which the court found that he comprehended the plea's implications and that he was entering the plea voluntarily and knowingly. (Plea Tr. at 6-9.) *See also Garcia-Santos v. United States*, 273 F.3d 506, 508 (2d Cir. 2001) (finding that plea agreement was entered into knowingly and voluntarily in part based on plea colloquy and defendant's signing the plea agreement). And, as reviewed in additional detail in the following section, Petitioner's ineffective assistance of counsel claims, including his claim that he entered into his plea agreement without effective assistance of counsel, lack merit.

### B.   Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy the two-prong test set forth in *Strickland*, in which the defendant must show: (1) that the counsel's performance was "deficient" according to "an objective standard of reasonableness," and (2) that the defendant was "prejudiced" as a result, meaning that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

6

would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, (1984). This is high standard, requiring Petitioner to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "[C]ounsel must have wide latitude in making tactical decisions." *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005). To demonstrate prejudice by ineffective assistance when entering his plea agreement, Mr. Gotterup must establish "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1989).

Petitioner makes four separate allegations as to ineffective assistance of counsel by trial counsel, Mr. Conway, and Second Circuit counsel, Mr. Angioletti. These claims are based on: (1) failure to adequately investigate; (2) failure to review the Pre-Sentencing Investigation Report; (3) failure to challenge the sentencing enhancement for violating a prior injunction that was inapplicable; and (4) coercion of the Petitioner into a plea agreement. As set forth below, each of these claims fails to show counsel's deficiency or to establish that the petitioner suffered prejudice as a result.

1. Failure to Properly Investigate

When evaluating an ineffective assistance of counsel claim based on a "decision not to investigate," the court must consider the claim in context and apply "a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.

Petitioner claims that his trial counsel, Mr. Conway, was ineffective due to his failure to investigate non-frivolous legal arguments. The Petitioner focuses, in particular, on Counsel's

7

supposed failure to investigate and contest the loss amount calculation which Petitioner asserts resulted in a significant sentencing enhancement, arguing that the $3.8 million amount used to calculate Petitioner's offense level should not have exceeded the approximately $2.6 million amount included in Petitioner's restitution order. (*Id.* at 7-8.)[3] According to Petitioner, the higher loss amount for sentencing was a result of "double counting" that Counsel should have identified and contested. (*Id.* at 7.)

In an affidavit, Mr. Conway asserts that he conducted a substantial investigation into the charges by "(1) reviewing substantial material provided by the government during the discovery process; (2) outlining and summarizing the significant aspects of the evidence received in the discovery process; (3) consulting with the defendant on a continuing basis regarding the allegations in the indictment; (4) securing from the defendant an outline or 'bullet point' presentation of potential defenses and or defense witnesses and relevant exhibits for use to rebut the governments allegations, and (5) spent considerable time discussing the matter with the assistant United States Attorney handling the case." (Conway Aff. ¶ 4.) As it relates to the loss amount, Mr. Conway asserts he spent numerous hours "reviewing the accounts and transactions . . . to determine what monies were legitimate or illegitimate" and that an "extensive review was undertaken to determine the origin of the monies in the account to make sure there was no double counting." (*Id.* ¶ 7.)

The court finds that Petitioner cannot demonstrate that counsel overlooked promising leads or that his failure to investigate rose to the level of ineffective assistance. This is further supported by Petitioner not providing legal or factual support for the claim that

---

[3] An 18-level enhancement is warranted when the loss amount exceeds $3,500,000 under U.S.S.G. § 2B1.1(b)(1)(J), so this supposed failure by counsel would have increased Mr. Gotterup's guidelines range.

the loss calculation was wrong. (*See* Petition at 6-9.) Calculations for loss amount and restitution may differ. *See United States v. Germosen*, 139 F. 3d 120, 130 (2d Cir. 1998) (The "amount-of-loss calculation . . . does not always equal such a calculation for restitution."). Restitution functions as a form of compensation and "focuses on the victim and the harm proximately caused by the defendant's conduct." *United States v. Grossi*, 608 F.3d 574, 580 (9th Cir. 2010). "Loss under the fraud guideline, by contrast, focuses on the defendant, and seeks, however imperfectly, to measure the seriousness of his or her criminal conduct." *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 102 (2d Cir. 2014). Indeed, the government provided a comprehensive explanation of the methodology employed to determine the loss amount. (PSR ¶¶ 27-30, 34.)

In reviewing the calculations included in the PSR, the government did not double count the losses from the mortgage flip scheme when calculating the loss amount based on the analysis of bank accounts, contrary to Petitioner's claims. (*See* PSR ¶ 34.) And even subtracting the fraudulently obtained funds from the mortgage flip scheme would result in a total loss amount exceeding $3.5 million. (*Id.*) Thus, even if Counsel's assistance was deficient, Petitioner would be unable to show prejudice based on the loss calculation. *See Arango v. United States*, 99 F.3d 400, 400 (2d Cir. 1995) ("Since there was no error in sentencing, petitioners cannot ascribe their sentences to ineffective assistance of counsel.").

Lastly, embedded within Petitioner's argument that counsel was ineffective in not investigating certain charges, Petitioner also asserts his innocence. (Petition at 12.) Defendants who procedurally defaulted a claim by not raising it on direct review may bring said claim in a habeas corpus petition only if the defendant can show either "cause" and "actual prejudice," or actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998).

To assert his innocence after having already been sentenced, the petitioner must provide new reliable evidence that supports his claim of constitutional error. *See Schwamborn v. United States*, 507 F. Supp. 2d 229, 244 (E.D.N.Y. 2007). Here, Petitioner's assertion of innocence is not in service of bringing a procedurally barred claim. It is instead used to support his ineffective assistance of counsel claim, which the court considered and rejected above. And even if relevant to Petitioner's claims, Mr. Gotterup fails to present any new reliable evidence that was not considered previously by the court in accepting Petitioner's guilty plea or imposing Petitioner's sentence to support an actual innocence argument. Thus, the court finds that Mr. Gotterup's assertions of actual innocence, contained within his argument concerning ineffective assistance, do not support his claim.

### 2. Review of the PSR

Petitioner alleges that his trial and appellate counsel "displayed serious deficient performance" by not adequately reviewing the PSR. (Pet. at 7.)

Mr. Conway refutes this assertion, attesting to his dedicating a substantial amount of time to thoroughly reviewing and discussing the specifics of the PSR with Petitioner. (Conway Aff. ¶ 7.) That Mr. Conway thoroughly reviewed the PSR is further supported by the comprehensive sentencing memorandum submitted by Mr. Conway on behalf of Petitioner. (*See generally* Sent'g Mem. (Dkt. 54).) This sentencing memorandum includes multiple exhibits as part of counsel's effort to secure a sentence significantly below the guidelines range, (*see generally id.*), and specific objections to portions of the PSR. (*Id.* at 2.) The court also specifically addressed whether counsel and defendant reviewed the PSR at resentencing hearing. (Resent. Tr. at 4.) And trial counsel's successful motion for reconsideration of the original sentence further supports his familiarity with the sentencing

guidelines included within the PSR. (*See* Mot. for Recons.; Resentencing Tr.) Lastly, that counsel reviewed the PSR is supported by the *Anders* brief prepared by appellate counsel which includes a review of the PSR when discussing why the plea agreement was favorable to Mr. Gotterup. (Anders Brief at 46-47.)

Thus, the court finds that counsel was not deficient in their performance relating to the PSR.

### 3. Two Level Sentencing Enhancement Based Upon Prior Injunction

Next, Petitioner alleges that his trial counsel permitted the Government to mistakenly apply a two-level enhancement in relation to violating a "Nassau County Court injunction from 2011." (Pet. at 12.)[4] While Petitioner is correct that Mr. Conway did not object to the Government's calculation of this enhancement, (*see generally* Conway Aff. ¶ 9), he is wrong to say Mr. Conway was deficient in failing to object. Conway notes in his affidavit that:

> Counsel thoroughly reviewed the proceedings regarding this injunction. Counsel also discussed the matter with counsel who handled that proceeding in New York. Furthermore, counsel raised this matter with the AUSA and after getting additional facts regarding injunctions in other states (specifically Massachusetts, Pennsylvania and California), was satisfied that the enhancement was proper. This was discussed on several occasions with the defendant and it was agreed that there was no challenge to be made to the enhancement. (Conway Aff. ¶ 9.)

Petitioner presents no evidence to refute the finding in the PSR that he violated the Nassau County Court injunction. He simply

---

[4] This relates to the PSR finding that "[t]he offense involved a violation of a prior judicial or administrative injunction; therefore, the offense level is increased by 2 levels per USSG 2B1.1(b)(9)(C)." (PSR ¶ 45.)

11

states that "he did not break said injunction" and that "a motion to stay a conviction for breaking the injunction was granted by Nassau County Court" without any evidence in support. (Petition at 12.) Without evidence contradicting the findings in the PSR and Conway's affidavit, Petitioner is unable to demonstrate that counsel was deficient in not challenging the application of a two-level enhancement.

### 4. Coercion

Finally, the petitioner makes a general assertion that "the Government coerced Mr. Gotterup against his will to read a false statement," and that they took advantage of his counsel's lack of familiarity with the case to do so. (Pet. at 11-12.) However, this argument is also rebutted by a review of the record. That Mr. Gotterup entered his plea agreement voluntarily is confirmed by the plea allocution in which Petitioner confirmed to the court that he read the plea agreement and was entering the plea voluntarily (Plea Tr. at 9-10, 22-23), trial counsel's affidavit confirming that Petitioner decided to plead guilty after a review of the evidence (Conway Aff. ¶ 6), and, significantly, the *Anders* brief's review of why the plea agreement was beneficial to Petitioner. (Anders Brief at 46-48.) Taken together, the record demonstrates that Mr. Gotterup was not coerced into accepting his guilty plea.

### 5. Summary

In sum, the court finds that counsel's performance was not deficient and that the Petitioner entered into the plea agreement voluntarily and knowingly. The Second Circuit, when denying Defendant's direct appeal by accepting the Ander's brief, found that "there [were] no non-frivolous issues which [could] be raised on appellant's behalf." (*Anders* Brief at 63; Mandate). Mr. Gotterup's Petition similarly does not demonstrate that there is any basis to vacate his conviction.

12

In making this determination based on the contents of the Petition, the record and documents submitted by Petitioner and the Government, the court finds that there is no "plausible" claim of ineffective assistance of counsel, and a hearing is not necessary and therefore denies Defendant's request for an evidentiary hearing. *See Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011).

### IV. CONCLUSION

For the reasons stated herein, the court DENIES Defendant's Petition and request for an evidentiary hearing. And because Petitioner has not made a substantial showing of the violation of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2).

SO ORDERED.

Dated:   Brooklyn, New York
         March 15, 2024

                                              s/Nicholas G. Garaufis
                                              NICHOLAS G. GARAUFIS
                                              United States District Judge